IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

SHEANETER J. BOGAN                                                                PLAINTIFF

V.                                                    CIVIL ACTION NO. 1:14-CV-225-SA-DAS

MTD CONSUMER GROUP INC                                                           DEFENDANT

MEMORANDUM OPINION

Sheaneter Bogan, a black female, claims her employer MTD Consumer Group terminated her because of her race and gender in violation of Title VII. MTD filed the pending Motion for Summary Judgment [41]. The Court has considered the motion, responses, rules, and authorities, and finds as follows:

*Factual and Procedural Background*

Bogan worked at MTD's Verona, Mississippi plant for approximately twenty-one years in various positions. Around 2009-2010, Bogan completed her Tool and Die degree at Itawamba Community College's Tupelo campus, and thereafter sought promotion into MTD's Tool and Die department. Bogan received a position in May 2011 on the night shift as a machinist in Tool and Die and worked there for several months. On her own request, in March 2012, Bogan transferred to the day shift, where she worked until her termination in April 2013.

Both before and after Bogan completed her Tool and Die degree, she pursued a Social Work degree at the University of Mississippi. The facility manager Ron Bateman and the Tool and Die manager Doug Grant initially permitted Bogan flexible work hours to accommodate her class schedule. In Fall 2012, however, the manager of Human Resources ("HR") Tab Cherry learned of this practice and notified Bogan's supervisors that her schedule violated company policy. According to Cherry, employees may only receive flexibility with classes that are work-

related, and Bogan's social work classes did not qualify for such treatment. Grant informed Bogan in December 2012 that MTD would not accommodate her class schedule beyond the Fall semester. She would be held to the normal day-shift hours, 5:00 a.m. to 3:30 p.m.

Shortly thereafter, Grant and Bateman noticed from Bogan's time sheets that she was working irregular hours at the plant. For example, on one Saturday in January, Bogan logged fifteen hours, but the next Monday, she worked less than four hours. To resolve these issues, Grant and Bateman met with Bogan on January 15, 2013 at approximately 4:30 p.m., and reiterated that Bogan could not attend classes during her working hours and could not deviate from her normal schedule.

Bogan testified that directly after the meeting, she went back to her area to clean her machine and stayed at work until 7:00 pm. This action prompted Cherry to issue Bogan a "final disciplinary notice." Bogan appealed the final disciplinary notice to a peer review board, which is comprised of five randomly drawn employees. In February 2013, the board upheld the disciplinary action.

In Spring 2013, Cherry began receiving reports through other students that Bogan was attending classes at the University of Mississippi's Tupelo campus, and he instituted an investigation. Cherry discovered that on April 23, Bogan left MTD's facility at 10:49 a.m. and returned to work at 11:47 a.m. Cherry confronted Bogan about her absence, and Bogan admitted that she occasionally attended a social work class during the middle of the work day. According to Cherry's investigation document, Bogan stated that she drove for ten minutes from MTD's Verona facility to the University of Mississippi's Tupelo campus, attended class for twenty minutes, and drove ten minutes back to Verona.

Cherry suspended Bogan pending investigation and terminated her on April 25, 2013. Bogan appealed the termination decision to the review board, which again upheld Cherry's decision by secret ballot. Of the five randomly selected employees on the board, one was a white male, and four were black females. MTD reassigned Bogan's duties to a white male.

Bogan filed an EEOC charge, received her right-to-sue letter, and then initiated this suit, alleging unlawful retaliation and discrimination based on age, gender, and race. She voluntarily dismissed her retaliation claim and has since conceded her age discrimination claim. The Court will address her remaining claims of race and gender discrimination.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37

F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion and Analysis*

Bogan attempts to establish her Title VII termination claims with circumstantial evidence, and therefore seeks to navigate the familiar burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir. 2007). Bogan must first establish a prima facie case of discrimination, after which the burden shifts to MTD to produce a legitimate non-discriminatory reason for terminating her. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219-20 (5th Cir. 2001). If MTD comes forth with a sufficient reason, the burden shifts back to Bogan to show that MTD's given reason was really a pretext for discrimination. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). Bogan must ultimately prove that her race or gender was a "motivating factor" in MTD's decision to terminate her. 42 U.S.C. § 2000e-2(m); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2526, 186 L. Ed. 2d 503 (2013).

To meet her prima facie burden, Bogan must demonstrate that "(1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action[,] and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were

treated more favorably." *Nasti*, 492 F.3d at 593 (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)). MTD contests only the fourth element for summary judgment purposes.

Bogan contends *inter alia* that she was replaced by John Tramel, a white male employee in Tool and Die who assumed her duties. Citing unreported Fifth Circuit authority, MTD argues that an employee "has not been 'replaced' . . . when h[er] former duties are distributed among other co-workers." *Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 295 (5th Cir. 2014) (internal citation and quotation omitted). However, this principle from *Griffin* may be confined to cases involving "layoffs or employer-planned reductions in force" as opposed to the single-employee termination in this case. *Howard v. United Parcel Serv., Inc.*, 447 F. App'x 626, 629 n.2 (5th Cir. 2011).[1] Further, the language in *Griffin* and in the cases on which it relies presupposes that the plaintiff's duties are distributed among multiple coworkers. 567, F. App'x at 295; *Rexses*, 401 F. App'x 868; *Dulin*, 1998 WL 127729, at *3; *see also Binger v. Anderson Enterprises*, No. 1:13-CV-150-SA, 2015 WL 461753, at *3 (N.D. Miss. Feb. 4, 2015) (no prima facie case where duties distributed between two existing employees). Here, one individual wholly subsumed Bogan's job.

Additionally, Tramel may qualify as Bogan's replacement if he not only assumed Bogan's duties, but was actually transferred to her job. *See Carbaugh v. Unisoft Int'l, Inc.*, No. H-10-CV-670-SL, 2011 WL 5553724, at *9 (S.D. Tex. Nov. 15, 2011) (phrasing inquiry as whether "the existing employees did not continue to perform their own jobs" in addition to

---

[1] The *Howard* Court rejected a strain of unreported Fifth Circuit cases involving single-employee terminations, in which the Court had held that an employee was not "replaced" when his duties were distributed to other employees. *Id.*; *Rexses v. Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010) (ellipsis in original); *Dulin v. Dover Elevator Co.*, 139 F.3d 898, 1998 WL 127729, at *3 (5th Cir. 1998); *see also Harkness v. Bauhaus USA, Inc.*, 86 F. Supp. 3d 544, 557 (N.D. Miss. 2015) (noting conflict in Fifth Circuit cases). Arguably consistent with *Howard* is *Griffin*, which was decided subsequently and involved a reduction-in-force. *Griffin*, 567 F. App'x at 295.

plaintiff's duties); *see also Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 537 (6th Cir. 2014) ("An employer 'replaces' a discharged employee when it reassigns an existing employee to assume the discharged employee's duties in a way that 'fundamentally change[s] the nature of his employment.'").

The specifics surrounding Tramel's assignment are not firmly established. Cherry stated in his declaration that Bogan's "former job duties were added to those" of John Tramel. In response to Bogan's interrogatories, MTD stated that her duties "were assigned to John Tramel . . . ." Barry Ledbetter, the day shift lead man, acknowledged that Tramel was "put in the position after [Bogan] was terminated." In view of these varying accounts, there remains a factual question as to whether Tramel merely assumed Bogan's duties or was transferred to take over her job.

For the foregoing reasons, the Court finds that Bogan has produced evidence that she was replaced by a white male individual, and has thus satisfied her prima facie burden. Accordingly, the burden shifts to MTD to produce a legitimate non-discriminatory reason for Bogan's termination.

To satisfy its burden, MTD need not "persuade the court that it was actually motivated by the proffered reasons." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Its burden is to "clearly set forth, through the introduction of admissible evidence, the reasons for [its decision]." *Id*. MTD asserts that Bogan was terminated for leaving the plant during work hours for an extended period of time without permission after receiving a final warning about adhering to her work schedule. This justification is grounded in the record; thus, MTD has discharged its burden.

The burden shifts back to Bogan to establish pretext by (1) "showing that a discriminatory motive more likely motivated [MTD's] decision, such as through evidence of disparate treatment" or (2) through evidence that MTD's "explanation is unworthy of credence." *Wallace*, 271 F.3d at 219-20 (internal citation and quotation marks omitted). Bogan has presented both types of evidence here.

There is some evidence that white and male Tool and Die employees were held to a different standard than Bogan. Although the Verona plant was comprised of majority female and majority black employees,[2] out of the approximately twenty-four employees in the Tool and Die department, Bogan was one of five black persons, one of two females, and the only black female. Other than Bogan, no black female had been employed in Tool and Die from the 1990's up until at least November 2015.

Bogan, Ledbetter, and night-shift lead man Bruce Enos testified that the Tool and Die department employees routinely took extended breaks beyond the prescribed time. Employees at the Verona plant have a set thirty minutes for lunch. But according to Bogan, the Tool and Die employees regularly took forty-five minutes to an hour for lunch. Ledbetter stated that "everybody" in Tool and Die leaves their work stations early to clean up for lunch, and that it is common for employees to take longer than thirty minutes. Enos was asked which night-shift Tool and Die employees took breaks of forty-five minutes to an hour, and he responded "I guess it would be about everybody that has done it." Bogan was the only Tool and Die employee punished for exceeding the thirty minutes scheduled for lunch.[3]

---

[2] As of April 2013, fifty-seven percent of MTD Verona's 669 employees were female, and seventy percent were black.

[3] MTD argues that Cherry did not view Bogan's conduct as a lunch-policy violation, but treated it as a more serious disciplinary infraction, given that she had been previously warned about adhering to her schedule. This counter-explanation is the type of evidence fit for a jury. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (noting that court may not weigh the evidence or engage in credibility determinations).

While there is no direct evidence that HR employees or other management was aware of the repeated extended breaks, the record shows that MTD generally afforded Tool and Die employees leeway not granted to its other employees. Ledbetter explained that the "Tool and Die department was like a fraternity. It had highly skilled personnel . . . . [N]obody really in management ever questioned us being late or coming back from break, you know, stuff like that." Bogan testified that when applying for the job in Tool and Die, the Assistant HR Manager, Clifton Hobby, told her "I have no control over Tool and Die. That is Ron Bateman's baby. HR does not have anything to say." Nonetheless, Bogan was terminated, not by Bateman, but by Cherry, the HR manager.

MTD argues that the other Tool and Die employees are not appropriate comparators, as they are not similarly situated to Bogan. Employees are similarly situated if the employment actions taken as to each arose "under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). "Nearly identical" is not the same thing as "identical," however. *Id.* The employees' "track record[s] at the company need not comprise the identical number of identical infractions, albeit these records must be comparable." *Id.* Bogan has offered a pool of individuals who all held responsibilities within the Tool and Die department and were all supervised by Grant, Bateman and either Ledbetter or Enos. Viewing the record in the light most favorable to Bogan, all Tool and Die employees violated the thirty-minute lunch allowance at some time or another. The Court finds the other Tool and Die employees sufficiently comparable for purposes of the Court's pretext analysis.

Finally, the fact that Tool and Die included other black men and another female does not thwart Bogan's evidence of differential treatment. Discrimination against a black female is illegal "even in the absence of discrimination against black men or white women." *Williams v. City of Tupelo, Miss.*, 414 F. App'x 689, 695 (5th Cir. 2011) (citing *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980)). Bogan has produced sufficient evidence that she was treated less favorably than white persons and males.

In addition to facts indicating differential treatment, Bogan cites evidence that may cast doubt on MTD's reason for her termination. *See Wallace*, 271 F.3d at 219-20. As discussed above, Bogan had been working abnormal hours, and Bateman and Grant communicated in the January 15 meeting that she must stick to her normal shift time. Bogan understood this requirement would be imposed beginning the next day, since she had come in late that day and had yet to clean her machine. Bateman and Grant claim that Bogan was told to go home following the meeting, though neither identifies who told her. Cherry issued a "final disciplinary notice" to Bogan for disregarding these alleged instructions. Bogan testified she never received the instructions.

Bogan further alleges three misrepresentations by Cherry during his investigation into Bogan's conduct. According to Cherry's investigation document, Bogan was enrolled in one class meeting from 10:30 a.m. to 11:45 a.m.; and until Spring Break, had been enrolled in another class meeting from 12:00 p.m. to 1:30pm. Cherry documented that Bogan admitted that she attended these classes "many times." Bogan testified "that was [Cherry']s response but I did not say that. But I attended when I could." Bogan also explained that she had never attended the afternoon class, and did not even know the instructor's name. Second, the document states that Bogan "was told to go home" after the January 15 meeting, which Bogan denies. Last, the

9

document notes that Cherry asked Bogan to sign a waiver so that MTD could view Bogan's school attendance records, and that she initially agreed, but later refused to sign. Bogan testified that Cherry never asked her to sign a waiver. Thus, the document used to justify Bogan's termination includes facts which, according to Bogan, paint an unfavorable and less-than-accurate picture of her conduct.

After reviewing the record as a whole, the Court finds that Bogan produced sufficient evidence to create a question of fact as to whether MTD's reasons for terminating her were pretextual. This evidence, when combined with her prima facie case, "may permit the trier of fact to conclude that [MTD] unlawfully discriminated." *Reeves*, 530 U.S. at 148, 120 S. Ct. 2097. Accordingly, summary judgment is inappropriate on Bogan's claims of race and gender discrimination.

*Conclusion*

For the foregoing reasons, MTD's Motion for Summary Judgment [41] is GRANTED IN PART and DENIED IN PART. Bogan conceded her age discrimination claim, and it is dismissed with prejudice. All other claims remain. A separate order to this effect shall issue this day.

SO ORDERED, this 1st day of July, 2016.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE