UNITED STATES DISTRICT COURT
NORTHERN DISTRICT MISSISSIPPI
ABERDEEN DIVISION

SHEANETER J. BOGAN     PLAINTIFF

V.     CIVIL ACTION NO.: 1:14cv225-SA-DAS

MTD CONSUMER GROUP, INC.     DEFENDANT

PRETRIAL ORDER

**1.** Choose [by a ✔ mark] one of the following paragraphs, as is appropriate to the action:

*If a pretrial conference was held*

    A pretrial conference was held as follows:

| | |
|---|---|
| Date: November 2, 2016 | Time: 10:30 am |
| United States Courthouse at: | Aberdeen, Mississippi |
| Before the following judicial officer: | Magistrate Judge David Sanders |

The final pretrial conference having been dispensed with by the judicial officer, the parties have conferred and agree upon the following terms of this pretrial order:

**2.** The following counsel appeared:

   **a.**   For the Plaintiff:

| Name | Postal and Email Addresses | Telephone No. |
|---|---|---|
| Ron L. Woodruff | Waide & Associates, P.A.<br>332N. Spring Street<br>P. O. Box 1357<br>Tupelo, MS 38802<br>rlw@waidelaw.com | (662)-842-7324 |

   **b.**   For the Defendant:

| Name | Postal and Email Addresses | Telephone No. |
|---|---|---|
| Robin B. Taylor<br>Timothy W. Lindsay | 207 West Jackson Street<br>Suite 200 | 601-360-8444 |

      Blythe Lollar      Ridgeland, MS 39157
                  robin.taylor@ogletreedeakins.com
                  tim.lindsay@ogletreedeakins.com
                  blythe.lollar@ogletreedeakins.com

**3.**  The pleadings are amended to conform to this pretrial order.

**4.**  The following claims (including claims stated in the complaint, counterclaims, crossclaims, third-party claims, etc.) have been filed:

  a.  Plaintiff's claim under Title VII for race discrimination; and
  b.  Plaintiff's claim under Title VII for gender discrimination.
  c.  Plaintiff's claim under Title VII for gender and race discrimination.

**5.**  The basis for this court's jurisdiction is:

This Court has federal question jurisdiction under 42 U.S.C. 2000e-2, 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343, for a cause of action arising under Title VII and the Civil Rights Act of 1964.

**6.**  The following jurisdictional question(s) remain(s) [If none, enter "None"]: None

**7.**  The following motions remain pending [If none, enter "None"] [Note: Pending motions not noted here may be deemed moot]:

**8.**  The parties accept the following **concise** summaries of the ultimate facts as claimed by:

  **a.**  Plaintiff:

On January 6, 1992, Sheaneter Bogan, black female, was hired by MTD to work as a general assembly employee at its Verona, Mississippi facility.

In 2010, after receiving her tool and die degree, Bogan applied to work in the tool and die department as a machinist. In January 2011, MTD hired Gary Johnson to work in the tool and die department as a machinist. Bogan was upset because they hired an outside candidate, a young male with whom she had graduated tool and die school, instead of herself, who had worked for MTD for around nineteen (19) years.

On May 19, 2011, Bogan was promoted to the tool and die department as a second shift CNC operator. There was only one other female working in the tool and die department as

machinist out of around twenty-four (24) employees, Micky Bowers, who was white. There were only around four black persons - Barry Ledbetter, Gary Johnson, Bruce Enos and Orlando Marion. However, there were no other black females working in the tool and die department other than Bogan. Bogan's supervisors testified that they did not have any problem with her work performance, and she showed up to work on time.

In the tool and die department, each week employees work a series of four shifts, totaling ten-and-a-half hours each, which includes a thirty (30) minute unpaid lunch break. Bogan clocked in at the beginning of the shift, and clocked out at the end. Employees did not sign in or out when they took their lunch breaks. Further, employees could leave the plant during their lunch break and were not required to sign out, or sign back in, when they left or returned to the plant. During an employee's lunch break, the employee could use that time any way he/she wanted to use it.

Bogan was told from the time she began work in the tool and die department that they operate by different rules than the rest of the plant. It was the custom and practice of the tool and die department that lunch breaks were longer than thirty (30) minutes. In fact, Bogan's lunch break could be anytime between 11:00 am until 12:00 pm. The lead man on the shift would take the long lunch breaks with everyone else, so Bogan knew she was doing nothing wrong.

While working for MTD, Bogan was also working on her degree in social work. MTD worked around Bogan's class schedule for the Fall 2012 semester.

On January 15, 2013, Bogan was called to a meeting with her supervisors, Doug Grant and Ron Bateman, to discuss her schedule. At the meeting, Bogan was told that her schedule would be from 5:00 a.m. until 3:30 p.m.

For the Spring semester Bogan had originally signed up for two classes. However, after she was informed that MTD would no longer accommodate her school schedule for the second class, Bogan dropped that class. The class Bogan did not drop met two days a week, Tuesday and Thursday, between 10:30 a.m. and 11:45 a.m. Bogan only attended the class sparingly.

Bogan did not clock out the few times she was able to attend the 10:30 a.m. class, because she would only attend the class during her lunch break, and would not be gone for more than the forty-five (45) minutes allowed for lunch. Bogan never asked for permission to attend the 10:30 a.m. class, because she knew she did not have to do so, it was her lunch hour.

MTD became aware that Bogan was attending classes at the Tupelo Campus of Ole Miss, so it conducted an investigation and terminated Bogan. MTD claims it fired Bogan for leaving the facility while on the clock attending a class. After being terminated, Bogan was replaced by a white male, John Trammel.

    **b.**    Defendant:

This case involves MTD's termination of Bogan's employment after she admitted leaving the plant during working hours without permission, despite having been given a final warning to adhere to her work schedule just months before. Even though Bogan admits she had been

informed that she could not leave work during her assigned shift to attend college courses, Bogan admits she did so. Bogan appealed her termination to the Employee Peer Review Board. After weighing evidence and testimony, this committee of her peers upheld the termination decision.

As background, MTD employed Bogan as a Wire EDM Operator in the Tool & Die department at its Verona, Mississippi on an at-will basis. In May 2011, Bogan applied for and MTD selected her to be a CNC Operator in the Tool & Die Department on the second (night) shift. In March 2012, MTD acquired a wire EDM machine and Bogan bid for this position and was selected. Bogan moved to the first (day) shift from March 2012 to her termination. The first shift schedule is 5:00 a.m. until 3:30 p.m. and Bogan's lunch was from 11:00 a.m. to 11:30 a.m.

At the time that Bogan bid for the Wire EDM Operator position, she was taking Social Work classes at the University of Mississippi. In December 2012, Doug Grant met with Bogan and informed her she could not attend classes during her work day. Bogan was informed that she could finish the fall 2012 semester, but could not continue this arrangement in the spring. At this same time, Grant counseled Bogan to adhere to her schedule of 5:00 a.m. to 3:30 p.m. Shortly thereafter, Grant sent an e-mail advising all employees not to be at work unscheduled and not to work alone due to safety concerns.

Bogan does not dispute these facts. Nevertheless, on January 5, 2013, Bogan chose to disregard the instructions and warnings she was given and came to work on a Saturday and worked 15 hours. Therefore, on January 15, 2013, Grant and Bateman met with Bogan to discuss her work schedule. During this meeting, both Grant and Bateman reiterated that Bogan could not attend classes during her work day. During this meeting Bogan again received employee counselling, was coached, and signed a document acknowledging that her shift time was from 5:00 a.m. to 3:30 p.m. and that any deviation from these hours would need prior approval.

At the conclusion of the meeting Bogan was told to go home because it was past her shift end time. Bogan agrees there was no question in her mind that she would be held to her regular schedule at MTD after she received her final warning. Despite having just acknowledged that she was not allowed to work outside of her scheduled shift, Bogan did not leave but instead returned to work and did not leave until 7:00 p.m. As a result of her refusal to comply with Grant and Bateman's immediate and clear instruction, Bogan was given a "final warning notice" for work schedule deviation.

Bogan disagreed with the final warning and appealed to the Employee Peer Review Board ("EPRB"). The EPRB operates independently of MTD management and has complete discretion to either affirm or overturn an MTD management employment disciplinary decision. The EPRB is a board made up of four hourly and one salaried employees randomly drawn from a volunteer group of trained and qualified board members.

Even though Bogan had been informed that she could not attend classes during the work day and had been disciplined for deviating from her work schedule, Bogan continued to leave the MTD facility, without authorization and during the work day, to attend classes

After a thorough investigation, MTD terminated Bogan's employment on April 25, 2013. Again, Bogan appealed to the EPRB. On April 30, 2013, the EPRB heard Bogan's appeal. After hearing all of the testimony and weighing all the evidence, the EPRB which on this occasion

included four African-American women and one male who had been randomly selected, voted by secret ballot to uphold the termination.

**9.** **a.** The following facts are established by the pleadings, by stipulation, or by admission:

1. MTD employed Bogan as a Wire EDM Operator in its Tool & Die department at its

Verona, Mississippi location prior to her termination in April 2013.

    **b.** The contested issues of fact are as follows:

1. Whether Plaintiff was treated any differently than similarly situated white employees under nearly identical situations.
2. Whether Plaintiff was treated any differently than similarly situated male employees under nearly identical situations.
3. Whether Plaintiff can identify similarly situated employees who were treated differently under nearly identical circumstances.
4. Whether Defendant possessed a legitimate, non-discriminatory reason for its decision to terminate Plaintiff.
5. Whether Defendant discriminated against Plaintiff because of her race.
6. Whether Defendant discriminated against Plaintiff because of her gender.
7. Whether Plaintiff can satisfy her prima facie case because MTD did not hire someone outside of the protected class to replace her, but instead her former job duties were added to those of an existing employee in the Tool & Die Department - John Tramel (Caucasian).
8. Whether Plaintiff has suffered or is entitled to any damages.
9. Whether Plaintiff reasonable or diligently attempted to mitigate her damages, if any.
10. What damages, if any, Plaintiff is entitled to receive.
11. Mixed questions of law and fact.
12. Whether Defendant discriminated against Plaintiff because she is a black female in terminating her.

    **c.** The contested issues of law are as follows:

1. Whether Plaintiff can satisfy her burden of proof of intentional race discrimination under Title VII.
2. Whether Plaintiff can satisfy her burden of proof of intentional gender discrimination under Title VII.
3. Whether Plaintiff can make a *prima facie* case of race discrimination.
4. Whether Plaintiff can make a *prima facie* case of gender discrimination.
5. Whether Plaintiff can prove that Defendant's legitimate, non-discriminatory reason for Plaintiff's termination was a pretext for discrimination.
6. Whether Plaintiff was discharged because of her race.
7. Whether Plaintiff was discharged because of her gender.

8. Whether Plaintiff reasonable or diligently attempted to mitigate her damages, if any.
9. Whether Plaintiff has suffered or is entitled to any damages.
10. Whether Plaintiff is entitled to a punitive damages instruction.
11. Whether Plaintiff is entitled to attorney fees, costs, and front pay or reinstatement.
12. Whether Plaintiff can make a *prima facie* case of gender and race discrimination.


**10.** The following is a list and brief description of all exhibits (except exhibits to be used for impeachment purposes only) to be offered in evidence by the parties. **Each exhibit has been marked for identification and examined by counsel.**

   **a.** To be offered by the Plaintiff:

   P-1   Application
   P-2   Employee Handbook
   P-3   Letter Dated May 19, 2011
   P-4   Series History
   P-5   Attendance Policy
   P-6   Bachelor of Social Work
   P-7   Response to Interrogatory 14
   P-8   Job Description
   P-9   MDES Request for Information
   P-10  MDES Determination Decision
   P-11  Medical Records
   P-12  2012 Taxes
   P-13  2013 Taxes
   P-14  2014 Taxes
   P-15  2015 Taxes
   P-16  2016 Check Stub


   The authenticity and admissibility in evidence of the preceding exhibits are stipulated. If the authenticity or admissibility of any of the preceding exhibits is objected to, the exhibit must be identified below, together with a statement of the specified evidentiary ground(s) for the objection(s):

   Defendant objects to the following:

   P-1   Object on grounds of relevance (FRE 402); Object on grounds it would mislead jury, confuse the issues, and waste time (FRE 403); Object on grounds exhibit contains inadmissible hearsay (FRE 802)
   P-6   Object on grounds of relevance (FRE 402); Object on grounds it would mislead jury, confuse the issues, and waste time (FRE 403)
   P-7   Object on grounds of exhibit contains inadmissible hearsay (FRE 802)
   P-9   Object on grounds of relevance (FRE 402); Object on grounds it would mislead jury, confuse the issues, and waste time (FRE 403); Object on grounds of exhibit contains inadmissible hearsay (FRE 802)

P-10  Object on grounds of relevance (FRE 402); Object on grounds it would mislead jury, confuse the issues, and waste time (FRE 403); Object on grounds of exhibit contains inadmissible hearsay (FRE 802)

P-11  Object on grounds of relevance (FRE 402); Object on grounds it would mislead jury, confuse the issues, and waste time (FRE 403); Object on grounds of exhibit contains inadmissible hearsay (FRE 802)

**b.** To be offered by the Defendant:

D-1   Handbook Acknowledgements
D-2   MTD Handbook – Tupelo Division
D-3   MTD Lifeline Telephone Number
D-4   February 9, 1996 Work Schedule Memo
D-5   February 14, 1996 Written Employee Consultation – Airap/MTD
D-6   November 30, 2000 Bob Bryson Memorandum (2 pages)
D-7   June 22, 2005 E-mail of Keith Blair to Tab Cherry regarding lay-off
D-8   Attendance Warning Notification for Sheaneter Bogan in 2004 and 2005
D-9   June 9, 2005 Memo of Tab Cherry
D-10  October 16, 2008 Employee Disqualification
D-11  Tuition Reimbursement and Invoices
D-12  Employee Peer Review Board for Bogan dated January 31, 2011
D-13  Job Bidding Policy and memos regarding Sheaneter Johnson Bogan
D-14  Loan Refinance Request
D-15  May 19, 2011 Acceptance of CNC Position
D-16  Job Description signed by Sheaneter Bogan
D-17  September 19, 2011 Memorandum of Doug Grant
D-18  January 10, 2013 E-mail from Doug Grant
D-19  Clock Report
D-20  January 15, 2013 Memo regarding work schedule signed by Sheaneter Bogan
D-21  January 16, 2013 E-mail of Ron Bateman
D-22  January 15, 2013 E-mail from Sheaneter Bogan to Doug Grant at 7:20 pm
D-23  January 22, 2013 Employee Disciplinary Notice for Sheaneter Bogan
D-24  Employee Peer Review Board for Bogan dated January 29, 2013
D-25  Employee Peer Review Board Handbook
D-26  February 12, 2013 discussion record of communication regarding appointments
D-27  March 25, 2013 Memo from Doug Grant to Tab Cherry regarding schedule
D-28  Investigation Report
D-29  Turnstile Reader
D-30  April 25, 2013 Employee Peer Review Board for Bogan
D-31  University of Mississippi Declaration and Transcripts for Bogan
D-32  withdrawn
D-33  withdrawn
D-34  withdrawn
D-35  Hours worked
D-36  Declaration and records of Key Staff Source, LLC
D-37  Declaration and records of Excelsior Staffing
D-38  Medical records from Shannon Family Medical Clinic/Norris Doss, FNP
D-39  Plaintiff's Responses to Request for Admissions
D-40  Ada Ruff Peer Review Documentation

    D-41   Photos and video depictions of the MTD plant operations and the EDM machine
    D-42   Demonstrative Exhibit #1- Timeline
    D-43   Demonstrative Exhibit #2 –Communication – Decision Outline
    D-44   Job Description signed by Sheaneter Bogan

The authenticity and admissibility in evidence of the preceding exhibits are stipulated. If the authenticity or admissibility of any of the preceding exhibits is objected to, the exhibit must be identified below, together with a statement of the specified evidentiary ground(s) for the objection(s):

Plaintiff objects to the following:

D-4    FRE 401, FRE 402, FRE 403, Hearsay
D-5    FRE 401, FRE 402, FRE 403, Hearsay
D-6    FRE 401, FRE 402, FRE 403, Hearsay
D-7    FRE 401, FRE 402, FRE 403, Hearsay
D-8    FRE 401, FRE 402, FRE 403, Hearsay
D-9    FRE 401, FRE 402, FRE 403, Hearsay
D-10  FRE 401, FRE 402, FRE 403, Hearsay
D-11  FRE 401, FRE 402, FRE 403, Hearsay
D-12  FRE 401, FRE 402, FRE 403, Hearsay
D-14  FRE 401, FRE 402, FRE 403, Hearsay
D-15  FRE 401, FRE 402, FRE 403, Hearsay
D-17  FRE 401, FRE 402, FRE 403, Hearsay
D-18  FRE 401, FRE 402, FRE 403, Hearsay
D-20  FRE 401, FRE 402, FRE 403, Hearsay
D-21  FRE 401, FRE 402, FRE 403, Hearsay
D-24  FRE 401, FRE 402, FRE 403, Hearsay
D-25  FRE 401, FRE 402, FRE 403, Hearsay
D-27  FRE 401, FRE 402, FRE 403, Hearsay
D-29  FRE 401, FRE 402, FRE 403, Hearsay, Authenticity
D-30  FRE 401, FRE 402, FRE 403, Hearsay
D-35  FRE 401, FRE 402, FRE 403, Hearsay, Authenticity
D-36  FRE 401, FRE 402, FRE 403, Hearsay
D-37  FRE 401, FRE 402, FRE 403, Hearsay
D-40  FRE 401, FRE 402, FRE 403, Hearsay

D-42  FRE 401, FRE 402, FRE 403, Hearsay
D-43  FRE 401, FRE 402, FRE 403, Hearsay

**11**.   The following is a list and brief description of charts, graphs, models, schematic diagrams, and similar objects which will be used in opening statements or closing arguments, but which **will not** be offered in evidence:

Demonstrative Exhibit #1- Timeline
Demonstrative Exhibit #2- Communication –Decision Outline

Objections, if any, to use of the preceding objects are as follows:

   Exhibit #1 – FRE 401, FRE 402, FRE 402, Hearsay
   Exhibit #2 – FRE 401, FRE 402, FRE 402, Hearsay


   If any other objects are to be used by any party, such objects will be submitted to opposing counsel at least three business days before trial.  If there is then any objection to use of the objects, the dispute will be submitted to the court at least one business day before trial.


**12.**  The following is a list of witnesses Plaintiff anticipates calling at trial (excluding witnesses to be used solely for rebuttal or impeachment).  All listed witnesses must be present to testify when called by a party unless specific arrangements have been made with the trial judge before commencement of trial.  The listing of a **WILL CALL** witness constitutes a professional representation, upon which opposing counsel may rely, that the witness will be present at trial, absent reasonable written notice to counsel to the contrary.

| | Name | Will/ May Call | [F]act/ [E]xpert [L]iability/ [D]amages | Business Address & Telephone Number |
|---|---|---|---|---|
| 1. | Sheaneter Bogan | Will | F/L/D | Nettleton, MS |
| 2. | Tab Cherry | May | F/L/D | Verona, MS |
| 3. | Clifton Hobby | May | F/L/D | Verona, MS |
| 4. | Ron Bateman | May | F/LID | Verona, MS |
| 5. | Doug Grant | May | F/L/D | Verona, MS |
| 6. | Barry Ledbetter | May | F/L/D | Verona, MS |
| 7. | Bruce Enos | May | F/LID | Verona, MS |
| 8. | Gary Johnson | May | F/L/D | Verona, MS |
| 9. | Teresa Dye | May | F/L/D | Verona, MS |
| 10. | Jessica Baker | May | F/LID | Verona, MS |
| 11. | Barry Smith | May | F/L/D | Verona, MS |
| 12. | Jerilynn Billingly | May | F/L/D | Verona, MS |
| 13. | Jan Baker | May | F/L/D | Verona, MS |
| 14. | Janice Moore | May | F/L/D | Verona, MS |
| 15. | Renita Jefferson | May | F/L/D | Verona, MS |
| 16. | Gary Earnest | May | F/L/D | Verona, MS |
| 17. | Clifford Smith | May | F/L/D | Verona, MS |
| 18. | Peaches Shumpert | May | F/L/D | Verona, MS |
| 19. | Randy Bogan | May | F/D | Shannon, MS |
| 20. | Clementines Mays | May | F/D | Shannon, MS |
| 21. | James Richardson | May | F/D | Tupelo, MS |
| 22. | Norris Doss | May | E/D | Shannon, MS |

Plaintiff reserves the right to call any witness listed by Defendants.

Will testify live.

Will testify by deposition:

Plaintiff reserves the right to use the deposition of any witness deposed in this matter if that person is unavailable for trial.

State whether the entire deposition, or only portions, will be used. Counsel **must** confer, no later than twenty-one days before the commencement of trial, to resolve **all** controversies concerning **all** depositions (electronically recorded or otherwise). All controversies not resolved by the parties **must** be submitted to the trial judge not later than fourteen days before trial. All objections not submitted within that time are waived.

**13.** The following is a list of witnesses Defendant anticipates calling at trial (excluding witnesses to be used solely for rebuttal or impeachment). All listed witnesses must be present to testify when called by a party unless specific arrangements have been made with the trial judge before commencement of trial. The listing of a **WILL CALL** witness constitutes a professional representation, upon which opposing counsel may rely, that the witness will be present at trial, absent reasonable written notice to counsel to the contrary.

| Name | Will/ May Call | [F]act/ [E]xpert [L]iability/ [D]amages | Business Address & Telephone Number |
|---|---|---|---|
| Sheaneter Bogan | Will | Fact/Liability/Damages | Nettleton, MS |
| Tab Cherry | May | Fact/Liability | Verona, MS |
| Cliff Hobby | May | Fact/Liability | Tupelo, MS |
| Jessica Baker | May | Fact/Liability | Verona, MS |
| Teresa Dye | May | Fact/Liability | Verona, MS |
| Ron Bateman | May | Fact/Liability | Verona, MS |
| Doug Grant | May | Fact/Liability | Verona, MS |
| Gary Johnson | May | Fact/Liability | Verona, MS |
| Bruce Enos | May | Fact/Liability | Verona, MS |
| Peaches Shumpert | May | Fact/Liability | Verona, MS |
| Medical Records Custodian-Shannon Family Medical | May | Fact/Liability/Damages | Norris Doss, FNP 219 Broad Street Shannon, MS 38868 |
| Records Custodian- University of Mississippi | May | Fact/Liability | |
| Records Custodian- Excelsior Staffing | May | Fact/Liability/Damages | |
| Records Custodian- Key Staff Source, LLC | May | Fact/Liability/Damages | |

<u>Defendant reserves the right to call any witnesses listed by the Plaintiff.  Plaintiff reserves the right to use the deposition of any witness deposed in this matter if that person is unavailable for trial.</u>

Will testify live.


Will testify by deposition:


>State whether the entire deposition, or only portions, will be used.  Counsel **must** confer, no later than twenty-one days before the commencement of trial, to resolve **all** controversies concerning **all** depositions (electronically recorded or otherwise).  All controversies not resolved by the parties **must** be submitted to the trial judge not later than fourteen days before trial.  All objections not submitted within that time are waived.

**14.**  This (✔) __✔__ is  _____ is not a jury case.

**15.**  Counsel suggests the following additional matters to aid in the disposition of this civil action:

**16.**     Counsel estimates the length of the trial will be ___3-4___ days.

**17.**     As stated in paragraph 1, this pretrial order has been formulated (a) at a pretrial conference before a judicial officer, notice of which was duly served on all parties, and at which the parties attended as stated above, or (b) the final pretrial conference having been dispensed with by the judicial officer, as a result of conferences between the parties. Reasonable opportunity has been afforded for corrections or additions prior to signing. This order will control the course of the trial, as provided by Rule 16, Federal Rules of Civil Procedure, and it may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

ORDERED, this the 17th day of January, 2016.

        /s/ Sharion Aycock_____
        UNITED STATES DISTRICT JUDGE

_____/s/*Ron L. Woodruff*_____
Jim Waide, MS Bar No. 6857
Rachel Pierce Waide, MS Bar No. 100420
Ron L. Woodruff, MS Bar No. 100391
Waide & Associates, P.A.
Attorneys for Plaintiff

__/s/ *Robin Banck Taylor*_____
Robin Banck Taylor, MS Bar 100195
Timothy W. Lindsay, MS Bar 1262
Blythe K. Lollar, MS Bar 104554
Attorneys for Defendant

    Entry of the preceding Pretrial Order is recommended by me on this, the ___7th___ day of November, 2016.

        /s/ David A. Sanders_____
        UNITED STATES MAGISTRATE JUDGE