IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

SHEANETER J. BOGAN                                                                    PLAINTIFF

V.                                                             CIVIL ACTION NO. 1:14-CV-225-SA-DAS

MTD CONSUMER GROUP, INC.                                                       DEFENDANT

MEMORANDUM OPINION

The present action was tried by a jury, and final judgment was entered in favor of Plaintiff Sheaneter Bogan on her claim of race and gender discrimination. The jury awarded damages of $1.00. Plaintiff filed Motions to Alter or Amend Judgment [97, 99], and Defendant filed a Cross-Motion for Judgment as a Matter of Law [101].

*Factual and Procedural Background*

Bogan, a former employee in MTD's Tool and Die department, proceeded to trial before a jury against MTD, alleging that she was terminated in violation of Title VII's race and gender discrimination prohibition. At the close of Bogan's case-in-chief, MTD moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court denied the motion, finding that the evidence created a factual issue as to whether MTD discriminated against Bogan. The jury was instructed to determine liability as well as compensatory damages and back pay. Ultimately, the jury returned a verdict in favor of Bogan and awarded damages in the amount of $1.00.

Following the verdict and award, MTD filed the present Motion for Judgment as a Matter of Law or, Alternatively, for New Trial, arguing that the evidence was insufficient as to find liability. Bogan filed Motions to Alter or Amend the Judgment, arguing that she is entitled to back pay and either reinstatement or front pay under the statute.

*Defendant's Rule 50 Motion for Judgment as a Matter of Law*

Federal Rule of Civil Procedure 50(b) allows a defendant to file a renewed motion for judgment as a matter of law following a verdict for the plaintiff. Judgment as a matter of law is warranted under Rule 50 if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have had a legally sufficient evidentiary basis to find for the party on that issue[.]" FED. R. CIV. P. 50(a)(1). The standard under Rule 50 "mirrors" the standard for summary judgment under Rule 56 "such that the inquiry under each is the same." *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (internal quotation and citation omitted). When ruling on a Rule 50 motion, the Court must "view the trial evidence in the light most favorable to the nonmovant, making all reasonable and factual inferences and credibility assessments in the nonmovant's favor." *Illinois Cent. R.R. Co. v. Guy*, 682 F.3d 381, 393 (5th Cir. 2012). The Court must uphold the verdict unless "the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Flowers v. S. Reg'l Physical Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir. 1994)).

At trial, many of the same factual issues persisted that were apparent during the pretrial motion phase. For example, whether Plaintiff had been replaced by a white male was still unclear. First, Barry Ledbetter, the day shift manager, testified that when Plaintiff was placed on the wire machine because of her successful bid, the company also assigned the same machine to John Trammel, a white male employee. This was true even though the machine was typically a "one-person" machine. Therefore, Plaintiff alleged that Defendant was discriminatory in assigning Trammel the secondary duties in the first place. Plaintiff argued that even though

Trammel was already trained in Plaintiff's position, he was initially positioned on this machine by the Defendant so that that the Defendant could terminate Plaintiff and then smoothly continue operation afterwards. Conversely, Defendant alleged that because Trammel was already assigned to that machine, he does not qualify as a replacement for Plaintiff.

Second, Ledbetter also testified that employees regularly took more than thirty-minutes for lunch breaks in the Tool and Die department, even though employees from the other departments adhered to the employee handbook rules more strictly. Therefore, Plaintiff argued that because others were allowed to take longer lunch breaks without reprimand, she was treated less favorably than her mostly white male coworkers when she was written up and then terminated for doing so.

Plaintiff also posed substantial evidence regarding deviations from disciplinary procedures, testimony about Plaintiff's absences from work, and the history of preferential treatment at MTD. Plaintiff pointed to Defendant's standard form disciplinary notice, which provided for progressive discipline. Plaintiff was not afforded such progressive warnings, but was instead given a final disciplinary notice and then terminated. Furthermore, Plaintiff presented evidence that showed that Defendant did not adhere to its point system policy for tardiness. Doug Grant, Plaintiff's former supervisor, also testified that he would normally talk to employees if they were late returning from lunch, and if they continued the behavior, they would be written up. Plaintiff argued that she was not afforded such oral warnings, but was fired after a write up for schedule violations.

Next, Plaintiff's Counsel elicited testimony from Jessica Baker, Defendant's assistant personnel manager. Baker admitted that she was aware that in the weeks preceding Plaintiff's termination, Plaintiff was frequently home with a sick child. Plaintiff's attorney questioned

3

whether Defendant perceived Plaintiff, as a woman, to be the stereotypical caregiver of the family. He argued that Defendant terminated Plaintiff because of fear that she would take more time off work because of her gender.

Finally, Plaintiff presented evidence that this was not the first time she had been confronted with Defendant's preference for men in the Tool and Die department. When Plaintiff first applied for the Tool and Die job, she was initially passed over because, Defendant claims, the position required experience. However, upon her second application, although Plaintiff had nineteen years' experience at MTD, Defendant hired an outsider, Gary Johnson, over Plaintiff.

Therefore, the factual issues were properly reserved for the jury, who made credibility determinations resulting in a verdict for Plaintiff. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (noting that court may not weigh the evidence or engage in credibility determinations). Thus, it may not be said that "the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Flowers*, 247 F.3d at 235 (quoting *Omnitech Int'l, Inc.*, 11 F.3d at 1322). Therefore, the jury's verdict on liability is upheld.

*Defendant's Rule 59 Motion for New Trial*

Alternatively, Defendant moves for a new trial. Federal Rule of Civil Procedure 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). Grounds for a new trial, while "undefined by the Rule" include situations where "the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Weckesser v. Chi. Bridge & Iron, L.G.*, 447 F. App'x 526, 529 (5th Cir.

2011) (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)). The Court finds no evidence requiring a new trial, for the verdict is not against the weight of the evidence, as stated, *supra*, the damages are not excessive, and there was no unfairness or prejudicial error.

*Plaintiff's Motions to Alter or Amend the Judgment*

The Plaintiff's motions seek relief under Rule 59(e) of the Federal Rules of Civil Procedure. "A Rule 59(e) motion calls into question the correctness of a judgment." *Templet v. Hydrochem. Inc.*, 367 F.3d 473, 478 (5th Cir. 2004). There are three grounds for altering or amending a judgment under Rule 59(e): "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *Williamson Pounders Architects, P.C. v. Tunica County*, 681 F. Supp. 2d 766, 767 (N.D. Miss. 2008).

Rule 59(e) motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment," *Templet*, 367 F.3d at 478, and they "should not be used to. . . re-urge matters that have already been advanced by a party." *Nationalist Movement v. Town of Jena*, 321 F. App'x 359, 364 (5th Cir. 2009). Indeed, it is "an extraordinary remedy that should be used sparingly." *Id.*

*Back Pay*

Plaintiff requests that the Court amend the jury's judgment and award back pay. Under the statute,

> [i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay.

42 U.S.C. § 2000e—5(g); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 452, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975). Back pay may be awarded to put victims of unlawful discrimination in the position in which they would have been but for the discrimination. *Sellers v. Delgado Community College*, 839 F.2d 1132, 1136 (5th Cir. 1988) (*Sellers II*). However, Title VII claimants have a duty to minimize their damages by seeking other suitable employment. *Sellers II*, 839 F.2d at 1136; *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988).

Once a plaintiff has made out a prima facie case of discrimination and has presented evidence on damages, the burden of proof shifts to the defendant to prove that substantially equivalent employment positions were available and that the claimant failed to use reasonable diligence in seeking those positions. *Sellers II*, 839 F.2d at 1138 (citing *Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614, 623 (6th Cir. 1983)).

Though pursuant to Title VII, back pay is considered an equitable issue generally determined by the Court, Plaintiff proposed the jury instruction which directed the jury to consider back pay, defining it as such:

> Back pay and benefits include the amounts the evidence shows Ms. Bogan would have earned had she remained an employee of Defendant, and includes fringe benefits such as life and health insurance, stock options, contributions to retirement, etc., minus the amounts of earnings and benefits, if any, Defendant proves by a preponderance of the evidence, Ms. Bogan received in the interim.

The instruction was given without objection from the parties. Therefore, Defendant argues that, as the parties consented to trial by jury of the back pay issue, increasing the back pay award would result in an improper additur. *See Hawkes v. Ayers*, 537 F.2d 836, 837 (5th Cir. 1976) ("It is well-settled, however, that the Seventh Amendment prohibits the utilization of additur, at least where the amount of damages is in dispute."); *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S. Ct.

296, 79 L. Ed. 603, (1935). Defendant counters that Plaintiff lost wages for which she was entitled, but the jury erroneously failed to award her what was due, warranting a Rule 59 amendment to the judgment.

However, the jury was instructed on mitigation of damages as well. The instruction stated, "[I]f you find that MTD Consumer Group Inc. has proved by a preponderance of the evidence that Ms. Bogan unreasonably failed to take advantage of an opportunity to lessen her damages, you should deny her recovery for those damages that she would have avoided had she taken advantage of the opportunity."

At trial, Defendant elicited testimony from Plaintiff, who stated that after her termination, she did not work for the remainder of 2013, but instead attended school and received unemployment benefits. Furthermore, though Plaintiff did not specify when she applied to other positions, she did testify that since she lost her job around four years ago, she has applied for fourteen to fifteen jobs.

When a person enters school, that person is no longer "ready, willing and available for employment." *Floca*, 845 F.2d at 112 (quoting *Miller v. Marsh*, 766 F.2d 490, 492 (11th Cir. 1985)); *see also Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 268 (10th Cir. 1975) ("[W]hen an employee opts to attend school, curtailing present earning capacity in order to reap greater future earnings, a back pay award for the period while attending school also would be like receiving a double benefit"). Furthermore, the jury may have reasonably found that applying for around fifteen jobs in four years does not suffice as a reasonable effort to obtain substantially equivalent work. Therefore, based on this evidence, the jury may have reasonably found that Plaintiff failed to mitigate her past damages since she was terminated from MTD.

*Reinstatement and Front Pay*

In addition to the award of back pay, Plaintiff also requests reinstatement or front pay pursuant to Title 42 U.S.C. § 2000e—5(g), which provides that the court may order "such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement . . . , or any other equitable relief as the court deems appropriate." At paragraph 9(b)(11) of the Pretrial Order [78], both reinstatement and front pay are listed as outstanding issues of law. Additionally, these remedies are equitable in nature and appropriately preserved for the judge, not the jury, to decide.[1] *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991).

The Fifth Circuit has instructed that the preferred equitable remedy is reinstatement. *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) (citing *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 (5th Cir. 2001)). Before deviating from this preference, the Court must first "consider 'and adequately articulate' its reasons for finding reinstatement to be infeasible . . . ." *Palasota v. Haggar Clothing*, 499 F.3d 474, 489 (quoting *Julian v. City of Houston*, 314 F.3d 721, 729 (5th Cir. 2002)). Among factors the Fifth Circuit has considered in determining the feasibility of reinstatement are "whether positions now exist comparable to the plaintiff's former position and whether reinstatement would require an employer to displace an existing employee," as well as "whether the plaintiff has changed careers and whether animosity exists between plaintiff and his former employer." *Id.* (citations omitted).

Defendant asserts that reinstatement is not feasible, because Plaintiff's position no longer exists as it did during her employment with MTD. Defendant argues that the Wire EDM machine

---

[1] "Since front pay is an equitable remedy, the district court rather than the jury should determine whether an award of front pay is appropriate, and if so, the amount of the award." *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992). But the district court may determine the amount of the award with the assistance of an advisory jury. *See Rutherford v. Harris County, Tex.*, 197 F.3d 173, 188 (5th Cir.1999); *see also* FED. R. CIV. P. 39(c). Here, Plaintiff did not request an award of front pay until after the jury returned its verdict. The district court therefore had no occasion to seek advisory findings from the jury on this issue.

now runs with little oversight, and therefore a primary operator is no longer necessary. Indeed, at trial, Cherry and Grant testified that MTD did not hire anyone to operate Plaintiff's machine after her termination. Instead, Defendant assigned Plaintiff's duties to Trammel and Kelly Montgomery, who purportedly operates this machine as well as performs his previous duties.

On August 18, 2017, the Court held a hearing wherein it was able to ascertain certain conclusions of fact regarding the feasibility of reinstatement and the legitimacy of Plaintiff's claims for front pay. During the hearing on Plaintiff's Motion to Alter Judgment so as to Award Reinstatement or Front Pay, Grant testified that reinstating Plaintiff would require substantial training, as the machine that Plaintiff worked on has been through several updates since she left. Michael Barnes, the current tool and die manager, gave testimony regarding the current role of the Wire EDM operator. He testified that the machine has become more efficient, and that no one has to be assigned to the machine specifically. Indeed, both employees—Kelly Montgomery and John Trammel—work on other machines *and* have different duties, such as supply ordering, design programming, CNC milling, and shop floor work. Additionally, Tab Cherry indicated that the budget within the tool and die department would not allow for any more employees, because MTD had lost business since Plaintiff's termination. Accordingly, the feasibility of Plaintiff returning to her old position is quite low.

Next, Plaintiff testified that she eventually obtained her degree in social work and applied for seminary, but did not attend. Until recently, she worked for a Toyota supplier in Mantachie, Mississippi in Control Sorting. Plaintiff was terminated from this job because she continued to park in the customer parking lot even after being warned not to do so. Plaintiff testified that many of the jobs that she has sought since her most recent termination were for counseling positions, indicating a desire to change careers and put her degree to work. She applied at a

hospital, hospice nursing homes, and day cares. Therefore, this factor also weighs in the Defendant's favor.

Next, Defendant put on proof that "Plaintiff's blatant refusal to abide by MTD's policies, repeated insubordination in the face of clear instructions from her supervisor, and disregard for MTD's time-keeping procedures resulting in wages being improperly paid for time Plaintiff was not working but was actually attending classes, without question changed MTD's assessment of Plaintiff's performance such that reinstatement is simply infeasible." Cherry stated that he had a strict no rehire policy, and would not be inclined to have Plaintiff return, because he maintains that even without the discriminatory motive, Plaintiff would have been terminated because of her inability to follow the rules and her attitude, which he believed would disrupt the morale of the facility and cause employee relations to deteriorate. Thus, Defendant argued that it would have terminated Plaintiff in the absence of any purported discrimination. *See* 42 U.S.C.A. § 2000e-5(g)(B) (If employer demonstrates that it "would have taken the same action in the absence of the impermissible motivating factor, the court . . . shall not award damages or issue an order requiring any . . . reinstatement").

Finally, Defendant asserts that there is sufficient discord between the parties to render reinstatement inappropriate. *See Goldstein v. Manhattan Indus.*, 758 F.2d 1435, 1448-49 (5th Cir. 1985). Defendants' hostility toward Plaintiff was palpable, especially during Tab Cherry's testimony, wherein he discussed the human resource issues he would face if the employee review process were to be negated by reinstating Plaintiff. Therefore, Plaintiff's request for reinstatement must be denied, as the feasibility factors weigh heavily in Defendant's favor.

*Front Pay*

Front pay is "an affirmative order designed to compensate the plaintiff for economic losses that have not occurred as of the date of the court decree, but that may occur as the plaintiff works toward his or her rightful place." *Sellers II*, 839 F.2d at 1141. In fashioning remedies under the Title VII the purpose of Congress was to make the plaintiff whole. *Id*.

Plaintiffs have a statutory duty to minimize damages. *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990); *Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 231, 102 S.Ct. 3057, 3063, 73 L.Ed.2d 721 (1982). However, the employer has the burden of proving failure to mitigate. *Sellers II*, 839 F.3d at 1138. To meet this burden, an employer may demonstrate that substantially equivalent work was available and that the Title VII claimant did not exercise reasonable diligence to obtain it. *Id.* In *Sellers II,* however, the Fifth Circuit held that "if an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment." *Id.*

"[T]he duty of a successful Title VII claimant to mitigate damages is not met by using reasonable diligence to obtain *any* employment. Rather the claimant must use reasonable diligence to obtain 'substantially equivalent' employment." *Sellers*, 902 F.2d at 1193 (citing *Ford Motor Co.*, 458 U.S. at 232, 102 S. Ct. 3057. The reasonableness of claimant's diligence "should be evaluated in light of the individual characteristics of the claimant and the job market." *Rasimas*, 714 F.2d at 624.

Defendants solidly met their burden of showing that Plaintiff failed to make reasonable efforts to obtain work, and that available positions existed. Defense Counsel obtained numerous tool and die job postings that were recently available, and questioned Plaintiff on whether she had applied to them. Though Plaintiff had applied at her local unemployment office for general

job postings, she had not sought to fill any of the positions mentioned by the Counselor. Furthermore, when questioned by the Court regarding whether she had been seeking employment, Plaintiff testified that, even though she was not happy with intermittent jobs and she did not find some of them to be comparable to her MTD job, she did not seek work elsewhere while she was employed. Nor has Plaintiff continued her tool and die education in order to remain up to date on recent technological innovations. Indeed, since the trial, Plaintiff has not made reasonable attempts to obtain or maintain a job. Therefore, she has not mitigated her future damages, and the Court must deny front pay, as well.

*Conclusion*

Defendant's renewed Motion for Judgment as a Matter of Law is hereby DENIED [101]. Plaintiff's Motion to Alter or Amend so as to Award Back Pay [99] is DENIED as well. Plaintiff's Motion to Alter or Amend as to Award Reinstatement or, Alternatively, Front Pay [97] is also DENIED.

It is SO ORDERED this the 18th day of September 2017.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE